## JAITE–GRANT DISPLAY BAG CO. v. THOMAS M. ROYAL & CO.

### No. 9661.

District Court, E. D. Pennsylvania.

July 8, 1938.

J. Ralph Barrow, of Akron, Ohio, Caesar & Rivise, and Charles W. Rivise, all of Philadelphia, Pa., for plaintiff.

Howson & Howson, Charles H. Howson, and Charles H. Howson, Jr., all of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

This is the usual form of bill charging infringement of a patent right. The patent is No. 1,970,848, issued to Richard A. Grant, and assigned to plaintiff. The patent relates to a special make of "display window bag".

The defenses are the likewise usual ones of invalidity and non-infringement. In the view we have taken it is only necessary to discuss the question of validity. The patent itself is evidence from which validity may be found. This puts upon the defendant the burden of overcoming the prima facie case presented by the plaintiff. Bags as a carrying receptacle are of very ancient vintage. They were made of such material that they had to be opened to disclose a view of the contents. Some one conceived the idea that there was an advantage in having bags so made as that the contents could be seen without opening the bag. Hence the prior art became enriched with the "display window bag". Some cost and difficulty attended the making of them until cellophane became purchasable at a low price. Since then the window of the bag has been made of cellophane. The construction was, that what became the front side of the bag was provided with an ·opening. This might extend from the top to the bottom of the bag or occupy only a part of that space. The cellophane was placed under or behind the opening, thus forming a window pane. A like idea was embodied in envelopes and in boxes. A bag is a tube closed at the bottom. It was an obvious advantage to have the sides and bottom of the bag collapsible so that they would fold up. Hence the "bellows" type of bag to which this patent specially relates. The general use of cellophane as the window pane was an invitation to the exercise of skill in so adjusting the cellophane as not to become displaced. The adhesive-plaster method was at once suggested. This did not prove satisfactory. The patentee devised his method for which he claims a patent. The comment has often been made that there is an inborn feeling in any one who introduced a new and special make of anything, that he by being first, has acquired an exclusive right to use or sell it. The law gives support to this feeling only in the doctrine of unfair competition. Beyond this no legal right is given. To secure an exclusive right to the thing made there must be a patent or copyright. To secure a patent right there must be not only novelty in a patent but also invention. Mere skill in the making is not invention. There is much the same difference between invention and skill as between science and art. The former deals with an idea; the latter with the application of the idea. Hence we have the phrase "inventive idea". What is the idea

here? At first it was the idea of a "display window bag". This may be said to be an inventive idea. After the introduction of the use of cellophane what was the idea? It was to so skilfully adjust or fasten the cellophane that it would not become displaced. One method was to use adhesive gum along the overlapping edge of the cellophane. Surely there must be, at the stage of the art then reached, no invention in this. Added holding strength was then given to the adhesive area by reducing the size of the window opening. No invention could be found in this. Is there any invention in lengthening the cellophane so that there would be an overlapping end to be tied or anchored in the folds forming the bottom of the bag and in the top when folded over? Doubtless this would be a special make of bag which would be better than others. More than this is called for to constitute invention. The patent laws are meant to promote a policy of the law. That policy is to stimulate progress in the arts and sciences. Few things come to us full fledged. There is almost always room for improvement. Patents would be a hindrance instead of a spur to progress, if every improvement which skill might devise, conferred a monopoly. It should always be kept in mind that a patent confers a monopoly. An always pertinent question is why should it? The only answer to the question of why this patentee should be given a monopoly of his make of window bag, is that the window is more skilfully and securely fastened to the bag opening than in other makes. There is nothing new in the method of fastening. As well claim invention for the substitution of a bowline knot for a half hitch in fastening a mooring line from a vessel to a wharf post. A test of the distinction between an idea which is always present in an invention and skill in applying it, is found by giving them expression. The inventive idea may be expressed in a few words; the product of skill must be described at length.

The solicitors for this plaintiff are capable and experienced Patent Lawyers. They have done for their client all which could have been done. When they come to describe this invention they require two pages of their printed brief. This suggests that they are not expressing an inventive idea but describing the product of skill.

This plaintiff, as we have said, claims a monopoly in the exclusive right to make, use and sell its special make of display window bag. Why? Because in making it the strip of cellophane which covers the window opening, is made long enough to be anchored in the bottom of the bag and to fold over at the top when the bag is closed. An analysis of Claim 1 of the patent shows this. It describes a bag of the old art, the only novel feature in the patented bag being that there is a strip of cellophane "extending along the inside of (the bag) substantially throughout its length to close (the window opening), said strip being adhesively secured to the inside of (the bag), the lower end of the strip being anchored in the lapped and secured wall portion of the bag". No novelty is claimed for the use of adhesive gum, so that the only new feature of the patented bag is the lengthening of the strip of cellophane to more than the heighth of the bag and tieing the excess length into the folds forming the bottom of the bag. It can be readily seen that this method of the attachment of the cellophane would form a better make of bag than the old gum attachment method, by giving added protection against displacement, but we see in it no invention. The disclosures of any product patent should be sufficiently full to enable one skilled in the art to make the patented thing. A window pane must not become displaced from the window opening. There might well occur to the mind of one skilled in the art of making display window bags, different means of fastening the pane to the window opening but it would not follow that each new method was the fruit of invention. This type of bag preceded the use of cellophane. When the latter came upon the market its use in the making of these bags would have occurred to any one. With its use would go the need of some method of fastening. The problem was not beyond the skill of those trained in the art. Any one employed in an art has the right to use his skill, unhampered by what another in the exercise of a like skill may have done. It is only when he crosses over into the field of invention that he must give way to one who has preceded him. A law which gave a patent to every product of mere skill would be based not only on a mistaken policy but would be impracticable.

The experience of this application in the Patent Office brings out this weakness of the granted patent. The claims were at first disallowed. It was only after the

mind of the Examiner had been diverted from the real question of invention to that of the value of the skill displayed, that a claim was allowed for the special make of bag of the applicant. The attention is apt to be focused upon the bag makers. The consequences of the allowance of patents for special make of bags extends to other industries. Envelope manufacturers and the makers of display boxes for the use of haberdashers are concerned for precisely the same problem which this patentee presented to himself, confronts them, although in a lesser degree. The former make window envelopes and the latter "display window" boxes of substantially the same type as display window bags.

The conclusion reached is that the issued patent is invalid for lack of invention.

The bill of the plaintiff should be dismissed, with costs, for want of equity.